The trial is announced this morning and the times will be as allotted to counsel. The first case today is number 191243, United States Dep't of Justice v. Michelle Ricco Jonas. Thank you. Thank you. You're from the state of New Hampshire when you're ready. Good morning. May it please the court, my name is Anthony Galdieri and I represent the appellant, New Hampshire PDMP Program Manager Michelle Ricco Jonas. This appeal presents two issues, one of statutory construction, the other of constitutional interpretation. My argument will focus predominantly on the statutory construction argument. Counsel for the amici will have five minutes of my time and will be focusing his argument on the Fourth Amendment issue presented. The statutory construction issue in this case is whether Congress intended Section 876C of the Controlled Substances Act to include the states. A proper statutory construction analysis reveals that it does not. And that analysis begins with the plain language of the statute, the term person, as it is used within that provision. The Controlled Substances Act does not define the term person and under such circumstances the United States Supreme Court directs that we apply a long-standing interpretive presumption that the term person does not include a sovereign like the state of New Hampshire or its alter egos, its agencies or its officials acting in their official capacities. The District Court made two fundamental legal errors in attempting to circumvent application of this long-standing presumption. First, the District Court treated an administrative subpoena issued under Section 876 of the Controlled Substances Act as a discovery subpoena issued under federal rule of civil procedure 45. It therefore conducted no statutory construction analysis of whether Section 876 itself authorizes subpoenas to be issued and enforced against states, their agencies, or their officials in their lawful official capacities. Second, the District Court elevated in this case labels and nomenclature over reality, contrary to this Court's holdings in Mearhead v. Meacham and the United States Supreme Court's holdings in Dugan v. Larson. Those cases establish the proper test for analyzing whether the state, as opposed to a natural person like Ms. Rico Jonas individually, is the real party and interest in a proceeding. And the test that's been established is whether the judgment would interfere with the public administration or would compel the government to act. And when specific performance is sought, like in this case, whether the state is the real party and interest hinges on whether the redress obtained against the officer will, in practical effect, be obtained through the sovereign. The relief requested in this case can only be obtained through the state of New Hampshire. State law establishes the PDMP as a state health care program. The state owns... Could you just tell me, as a practical matter, how, if we agree with your position, the federal government would be able to perform its function of regulating these controlled substances? Well, the federal government performs the function of regulating controlled substances within the context of the Controlled Substances Act by interacting as partners with other sovereign entities, like the states. That the Controlled Substances Act specifically contemplates cooperative arrangements between the states. Are you saying that if the federal government had asked you for the records, that would be different? Your qualm is with the fact that they've tried to subpoena them, as opposed to requesting them? The qualm, Your Honor, is that we have an information-sharing restriction that requires law enforcement to get an order based on probable cause in order to get these records. The cooperative provisions of the Controlled Substances Act command that the Attorney General shall cooperate. That doesn't mean in all cases the Attorney General is going to be able to get certain information. And as recently as less than a year ago... So if the state law said the information shall not be shared, would that trump a request or a subpoena from the federal government? There is no authority to issue the subpoena to the state government. So yes, Your Honor, that law would stand as... So how is that cooperative? Well, inherent within the nature of the term cooperation, Section 873 of the Controlled Substances Act commands the Attorney General to cooperate with the states, to make information-sharing arrangements, to cooperate in investigative efforts. The nature of cooperation is the state as an independent, sovereign partner in the war on drugs could feasibly choose not to cooperate. Has New Hampshire chosen to do that? I don't understand how the government... Because outside of a criminal investigation, which this, I assume, is, the federal government has a much broader interest in the regulation of controlled substances. And I'm trying to figure out how they could get the information if you're unwilling, the state is unwilling, and the federal government can't compel the production of the information. Well, Your Honor, there's a couple of pieces to that. In the broader context, the state of New Hampshire also has its version of a Controlled Substances Act, which commands, unless there are otherwise certain state law barriers or information restrictions, cooperation with the United States and with the DEA. Within the PDMP program, there is this limited informational barrier. And this limited informational barrier says if you, if law enforcement wants information out of the PDMP, a digital chronicle of a patient's prescription drug records for Schedule II-IV substances, it needs to present the program manager with an order based on probable cause. And that is a limited information sharing restriction. So it doesn't contemplate, for example, a federal grand jury subpoena? Would the state have to comply with a federal grand jury subpoena? Well, I believe, Your Honor, different rules apply to a federal grand jury subpoena. It's issued under a different authority. And so? And so I, we haven't, I haven't done that analysis. I would assume that the answer would be yes to that, that the federal grand jury subpoena is a unique item that emanates under another authority. Under the CSA, the provisions that govern, and when you look at the CSA and you analyze its provisions in pairing material with Section 876, what you see is that the Attorney General is supposed to engage in cooperative efforts with other sovereigns and is supposed to engage in information sharing. And Section 832 of the Controlled Substances Act was just added less than a year ago. Within that provision, Congress put in a subsection entitled Subsection C, and there's a further subsection, C-3, and that has to do with information sharing. And that section states that in establishing the process for the provision of information under the subsection, the Attorney General shall coordinate with states to ensure that the Attorney General has access to information as permitted under state law possessed by the states relating to prescriptions for controlled substances that will assist in enforcing federal law. In other words, state law restrictions on certain information sharing will be respected, and Congress intends for them to be respected. And the instant administrative subpoena and enforcement action bear no resemblance to those cooperative, respectful relationships that are contemplated between the sovereigns within the Controlled Substances Act. Well, how broad do you read that authority to be for the state to impose restriction? Well, the state is not a person who an administrative subpoena could be issued to or could be enforced against. That's not my question. You just read what you said is an amendment. I'm trying to figure out if your interpretation of that is that the state can impose restrictions. How broad is that imposition can be? I believe the imposition could be quite broad. As permitted under state law would indicate that the states could put restrictions in place, informational barriers in place, that protect their citizens' information. Presumably, the states, too, are partners in this effort to control drug abuse and substance abuse and diversion of controlled substances. Presumably, those restrictions wouldn't be taken exceptionally far, but they could impose informational barriers and restrictions to protect the privacy of their residents and their citizens. What relevance, if any, does the Carpenter case have to this situation? The Carpenter case is highly relevant to this situation because what you have in Carpenter is a reasonable expectation of privacy and a digital chronicle of your whereabouts over an extended period of time. What you have within the PDMP is a digital chronicle of a patient's prescription drug records. Can I say that? I am out of time. No, no. Please continue. And what you have within the PDMP is a digital chronicle of a patient's Schedule 2 through 4 prescription drug records. You cannot obtain that chronicle of information, at least not very easily, by attempting to visit the CVS down the street and the Rite Aid on the corner and the pharmacy down the block, even though their records may be open to agents of the government to look at if they walk in that building. How do you reconcile, actually, the provision in this statute that says that the data will not be turned over to law enforcement except based on a warrant issued on probable cause, but when it comes to dispensaries, as you just said, law enforcement can inspect at their pleasure? It's basically the same information, or much of it seems to be the same information. It's not, Your Honor, and this is why Carpenter is controlling. When you walk into a pharmacy, you can look at the books of the pharmacy, but you can only see that Mrs. Baker, patient X, filled one prescription there. You don't know Mrs. Baker's entire prescription drug history by walking into a single dispensary and looking at her books. But the police can walk into every dispensary in the state? It's just a greater effort. Right. They can perform the investigative work to look at 100-plus pharmacies in the state and put together that analysis. That could be done, but in Carpenter, that's exactly what the U.S. Supreme Court rejected. You could follow somebody around for 120 days and figure out everywhere they've been and chronicle that, and that's perfectly acceptable, particularly if they're in public, but it is being able to access the digital chronicle of that through a third-party record that is problematic and that there's an expectation of privacy in. Thank you, Mr. Galdier. Thank you, Your Honor. Good morning, Your Honors. May it please the Court, Nathan Preetwesler of the ACLU on behalf of the media. The question in this case is whether patients have a reasonable expectation of privacy in record-revealing their sensitive medical information, including diagnoses of AIDS and cancer, psychiatric conditions such as anxiety and panic disorders, transgender status, testosterone deficiency, substance abuse disorder treatment, and much more. Now, against the obvious privacy interest in that information, the federal government offers two arguments, the closely regulated industry exception and the third-party doctrine, but neither apply here. Judge Howard, to start to address your question about the disproportionate treatment of the PDMP and the pharmacies, the DEA in this case has relied on what I think is an extreme proposition that if certain information might be accessible through an administrative inspection of a particular business pursuant to the closely regulated industry exception, any record anywhere in the world containing equivalent information should also be available without a warrant, but that's not how the Fourth Amendment works. Of course, my question was actually directed to the other counsel in the case, because they're the ones that were taking what I think are perhaps disparate positions on the two statutes. You have a way of reconciling it, which is different, I think. That's right, and as you know, we're not arguing the statutory interpretation question, but I take the DEA's argument to be that because an individual pharmacy could be inspected for regulatory compliance under a regime of licensing and bookkeeping requirements, any record that might contain information flowing from the same source, wherever it might be, has lost its expectation of privacy. But the Supreme Court has explained time and again that the Fourth Amendment is concerned not just with what information the government obtains, but with how it obtains it and from where. And the fact that an exception to the warrant requirement might apply to one search doesn't mean that every other search in the related area is exempt. But would the concern be satisfied if there were an opportunity for, in a particular case, for the patient whose records are being sought, or records pertaining to the patient are being sought, would have an opportunity to object to the subpoena? I think that would change the analysis. I think it would be a tougher case in that circumstance. And the reason is that I think part of the animating principle of Carpenter is that we need a warrant in a situation where an individual has a reasonable expectation of privacy in records held by a third party because the normal protections of the subpoena process are just absent there. There is no notice, and notice is precluded under the terms of the subpoena. But is it sufficient then for the state or the state officer to pose objections, either in a parent's patriarchal or on some other basis, on behalf of those people? Since not only does the statute prohibit notice to them, it seems to be virtually impossible that it would be workable to give notice to them. And that, I think, is why a neutral magistrate should be interposed in the process. But if it works okay, if notice were given, I thought you just said it might be a different situation if notice were given and an opportunity to object. But here, if there's a reasonable substitute for that, that's what I'm asking. So I think it would be a closer case, Your Honor, but I still think a warrant requirement would apply. And I think that although this was one of the animating reasons of Carpenter to require a warrant, Carpenter, I think, is clear that when there is a reasonable expectation of privacy in records held by a third party, the warrant requirement applies. So I think that would apply in your hypothetical. So how about a federal grand jury subpoena? So Carpenter doesn't talk about specifically federal grand jury subpoenas. It talks about administrative subpoenas and similar process. But I think the Fourth Amendment rule would be the same. The Supreme Court's Fourth Amendment cases apply the same reasonableness standard to administrative and grand jury subpoenas. And the Supreme Court's rationale in requiring a warrant for these third party records, the small category in which there is an expectation of privacy, I think would be the same. Nonetheless, this Court doesn't need to address that question here, because here we have an administrative subpoena for highly sensitive records. Yeah, but I'm trying to figure out where you're drawing the line, and it sounds like you're saying a federal grand jury subpoena wouldn't have to be honored either. That's right. I think that's what you just said. That's right. That is our position. Now, if this Court disagreed on grand jury subpoenas, it could still rule as we urge on the administrative subpoena, obviously. But that, I think, is the best interpretation of the Fourth Amendment's protections in this area. But the digital age has fundamentally changed. As my friend explained, we're dealing here with a categorically new power of law enforcement that makes this search easy, cheap, and efficient, in the words of the Supreme Court, compared to traditional investigative tools. This upends the expectation that people have had about practical limits on police power and requires the protections of a warrant to ensure that law enforcement agents in criminal investigations, and again, this is not a regulatory inspection that would fall under the special needs or the closely regulated industry exception, but in a criminal investigation seeking highly sensitive records in the state database, a warrant is required under the Fourth Amendment here. I see that my time has expired. Thank you very much. Thank you. Good morning. Seth A. Frank of the United States. May it please the Court. So we just heard that this is a digital, new age kind of case. In 1977, the Supreme Court considered a database that collected prescription drug information, much like the one here, and affirmed and upheld that against 14th Amendment privacy claims. So the question here isn't, is it digital? Is it being collected in a database? It's really about what kind of information are we talking about as far as the Fourth Amendment claim goes. Carpenter's fundamental concern, looking at the Jones GPS case, the Riley cell phone case, was the ability to use the cell phone for pervasive government surveillance of a person. This is a prescription drug information is no doubt personal, but it's a data point. It's a piece of information. It's a piece of information like a bank record. It's a piece of information like the telephone numbers you dial. Justice Roberts called those items in Carpenter personal. They are personal. Prescription drug information is personal. That doesn't change the application of the third-party doctrine. The reality is a person, the record is the order from the doctor to the pharmacy to provide controlled substances to a person. That is a commercial transaction. The record belongs to the pharmacy. It is not much like the bank record. To say that Carpenter somehow changed the analysis here I think doesn't get it right. The other aspect of the Fourth Amendment argument is a heavily regulated industry doctrine. Why these doctrines are important is the ex-ante question is, is there a legal expectation of privacy in prescription drug records? That's the threshold question in every Fourth Amendment case. Why is the heavily regulated industry doctrine important? Because it forms our understanding of what's going to happen to those prescriptions that we provide to pharmacies to get medications. They are open to inspection by federal authorities through the Federal Controlled Substances Act and in New Hampshire to state authorities as a result of New Hampshire law. So the expectation is that no, those are not private. They may be personal. I'm not here to say they're not personal. But they are not private in the Fourth Amendment sense because personal is not the line that the Supreme Court has drawn. I think that's the line that's being drawn by friends on the other side in this case. That's not really the right question. That's why the statutes that allow inspection are important. When you ask the question, Judge Howard, or the other side, it's really hard to do this kind of pharmacy-by-pharmacy analysis. In fact, it's really not because, of course, all the big pharmacies keep their own digital records. So the state contacts CVS. CVS has a digital record. You contact the major pharmacy companies that are in New Hampshire. You've gotten most of the records that are available. So the PDMP is a compilation, an aggregation of records that are already not private in the Fourth Amendment sense. I think that's the important point for the Fourth Amendment claim. The federal law also permits the same kind of inspection in a doctor's office on the prescribing information. Is that accurate? If it's prescription information. So the Controlled Substances Act is about drugs, controlled substances. So I think to the extent what you're seeking is an order for production of drugs, I'm not sure that the location of that information. But it's only related to drugs. It's not related. So in the briefs, there's this sort of slipperiness between medical records and prescription records. And they are sometimes used as one label. And I don't think they are one label. Prescription drugs, that's the heavily regulated industry portion for reasons that we all understand. Government has for a long time said we need to understand where the flows of controlled substances are going because of all the risks we're all too familiar with. And that's the reason for the heavily regulated nature of the pharmacy, the drug part, which is different than the medical records part. I'm not here to opine on whether you need to search long for medical records, but I can say that's not this case. And to the extent the briefs use the term medical records as an umbrella, I think that confuses rather than clarifies what we're talking about. Because in this case, we're talking about prescription records that have to be turned over somehow to be dispensed. The doctor, I mean, a doctor in some cases, I guess, can dispense drugs. Usually it's the pharmacy. And those are the records that we are talking about here. And so the question in this case, I think, properly analyzed is, is there a reasonable expectation of privacy? Where I think the ACLU gets it wrong is to say, well, when they look at it to try to get it for a criminal or some other investigative reason, now it has a Fourth Amendment protection when maybe otherwise it didn't. The question of whether there's a privacy right is the first question. And once you determine, if you determine it does not, then it doesn't regain that privacy aspect under the Fourth Amendment just because the government may be wanting it for investigative purposes. Can you have, is an expectation of privacy right a black and white issue? Or can you have a limited expectation of privacy? It'll be subject to investigation in a limited sense only. So as to the government, I guess. So the expectation is the buyer of the of the of the patient. So when you look at Wayland, Wayland is the case about New York's sort of drug dispensing drug database statute. What they said in Wayland that it survived 14th Amendment reasonable privacy scrutiny was that it did not just open it up to public inspection. It's not that a non-government entity who just wanted to know what kind of drugs I might be taking can ask the PDMP. The Supreme Court in that case suggested that could be a problem because that could be a 14th Amendment problem. For Fourth Amendment purposes, can the government get it? Does it need a search warrant? Not can the government get it, but does the government need a search warrant? I do think that has to be a sort of a red light, green light situation. So the answer to my question is? I think for the Fourth Amendment, yes. For the 14th Amendment, no. This is a Fourth Amendment case, I think yes. I think it has to be, is a search warrant required, which is the argument that's being made, that has to be a yes or no answer. The expectation of privacy, does it have to be absolute expectation? It has to be subjectively held by the person, and it has to be one that society is ready to recognize as reasonable. We have no idea what this particular person thinks for reasons I think Judge Howard pointed out, but I think society does not recognize this as reasonable because we already allow it and have allowed it to be inspected for years and years and years. But in this day and age where the practice of medicine is so much pharmacologically based, from the patient's perspective, I know the law has been in place for a long time, quite familiar with that fact, it seems shocking. It seems shocking that information about one's... And I guess this gets to the question of what's personal and what's private, because I can say the same thing about when I sign up for a life insurance policy and I have to fill out a very long form health profile and I give it over to the life insurance company, they have all that information and it can be subpoenaed. The bank records. There's very personal information in bank records that people do not want to share. We can figure out a lot about a person's life in a lot of different ways by examining their bank records. The Supreme Court recognized that in Miller. It was very much on the Court's mind when it said we understand that, but the problem is you have turned it over to a third party. Whether you think they're going to further disseminate it or hope that they don't, or don't expect that they will is not the answer. But there seems to be some recognition that the world has changed in Carpenter. How do you set Carpenter completely aside? I think because the concern in Carpenter wasn't that banks collect lots of data that can be turned over through a computer. What was concerning in Carpenter was the same concern that there was in Jones, which is permeating government surveillance about the entire narrative of your movements. This is not that. This is a narrow slice of information that's personal, but it's not we are able now to look at everywhere you've gone, where you've been every day, every hour, for as long as you're holding your phone, which you are not doing voluntarily. Now, in Wayland, the exact same voluntary argument was made and rejected. This idea that, well, I'm not going to be able to use the pharmacy system because I need to protect my privacy. The Supreme Court said, no, maybe some people won't, but unfortunately dealing with the medical system requires you to expose information. Information is shared, turned over to insurance companies. It is out there. And the Supreme Court has said back then that that was not an adequate reason to find that you couldn't have this kind of aggregating database. So humor me on one point. I have more than a passing interest in Riley and Worry. Right. And my recollection is that in those cases, the court actually said one of the privacy interests that's being invaded here is the fact that a cell phone contains information such as what prescription drugs somebody's taking. Because that was a window to your whole world. We take your phone, and now what we've done by taking your phone without a warrant, hitting a few buttons, opening it up, is we now have basically surveillance of you. But I may not be remembering this correctly, but I think one of the points they were making is that the kind of private information that could actually be exposed. Sure.  And I think they'll look at your bank records, too, through your phone in the exact same way. Right. And so they're all private. They're all personal. They're all personal. What I get by taking your phone, right, is the ability now, because the phone is the window into your world, I can now go look at all of your personal information that you, as opposed to I go and subpoena the bank for the bank's records. Not only am I looking at your medical records and your personal records, I get to look at your pictures. I get to look at who you've texted. I get to look at everything about you. That is in line with the Supreme Court's concern in Carpenter about pervasive surveillance. This is not pervasive surveillance. This is a discrete category of personal information like financial records. These are prescription drug records that have been turned over voluntarily to a third party. And once you've done that, the third party doctor says they are no longer private under the Fourth Amendment. But voluntary, as Judge Toria might have pointed out, seems to me to be a somewhat squishy word, too. The potential calamitous effects of not getting a prescription make it somewhat less than voluntary. I would point you to Whalen because I do think that argument was raised and discussed by the Supreme Court, that precise argument. So I don't mean to monopolize, but I did have another question with respect to standing. If either the state official or the state cannot make the arguments that it's made, how would somebody object to this information? Could it be objected? Could you make a Fourth Amendment claim at a criminal trial, for example? Yeah, I think down the line, potentially, once the information was used. I think standing is tricky here, to be perfectly honest with you, because Rico Jonas has to make a decision on whether to turn these materials over. And as a state employee, she could be subject to liability under 1983 if she's violating someone's Fourth Amendment rights. So I do think it's a complicated question, which I could not find direct authority. So what is she supposed to do in that situation where she may be committed? I mean, maybe she has qualified immunity. That could be the answer. But she definitely has some risk until there's a decision on how to proceed. I'm sorry, finish. No, that was my thought, that it is a difficult question. I think it's a difficult question. Why doesn't the Doctrine of Paris Patriot take care of standing? So there is Supreme Court authority that says that the state can't raise constitutional claims against the federal government. There's some dispute between the parties on that. As you notice, I did not focus as much on standing. I think there is a question, though. I mean, the counter of that is that the first question in a Cass analysis is, does the person have a subjective expectation of privacy? Well, unless we have that person here, we don't know. That's a difficulty, which is why the court has said orphan and their rights cannot be vicariously asserted. Well, the reason that would be is because you actually can't do the whole analysis without the subjective component, which is individualized. So that's the difficulty, which is why it's not really standing. The Supreme Court has said time and again, this reasonable expectation of privacy idea is not a standing idea in the sense of Article III standing. It's a Fourth Amendment question of, can you assert this claim? And I think the question is, without the person here to say they have a subjective interest in this information, you really can't do the full analysis. Thank you. Thank you. Thank you all.